**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Catherine Bleish

    v.                                   Civil No. 11-cv-162-LM
                                            Opinion No. 2012 DNH 118
Master Patrolman Todd M. Moriarty,
Individually and Officially; Senior
Patrolman Matthew J. DiFava,
Individually and Officially; Senior
Patrolman Timothy J. MacIsaac,
Individually and Officially; Officer
Charles MacGregor, Individually and
Officially; Officer Eric Walker,
Individually and Officially; Chief
Donald F. Conley, Individually and
Officially; Nashua Police Department;
and The City of Nashua


**AMENDED ORDER**

In a case that arises from her arrest by officers of the

Nashua Police Department, Catherine Bleish is suing in thirteen

counts.  By means of 42 U.S.C. § 1983,[1] she assert claims for

violation of her rights under the Federal Constitution (Counts

I-V), and she also asserts claims under the common law of New

---

[1] "To make out a viable cause of action under section 1983,
a plaintiff must allege that the defendants, while acting under
color of state law, deprived [her] of rights secured by the
Constitution or federal law."  Rojas-Velázquez v. Figueroa-
Sancha, 676 F.3d 206, 209 (2012) (citing Santiago v. Puerto
Rico, 655 F.3d 61, 68 (1st Cir. 2011)).

Hampshire (Counts XI-XVI).[2]  Before the court are cross motions
for summary judgment.  For the reasons that follow, Bleish's
motion is denied and defendants' motion is granted.

### Summary Judgment Standard

"To prevail on summary judgment, the moving party must show
that 'there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law.'"  Markel
Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 29 (1st Cir. 2012)
(quoting Fed. R. Civ. P. 56(a)).  "[A]n issue of fact is genuine
if 'a reasonable jury could resolve it in favor of either
party.'"  Markel, 674 F.3d at 29-30 (quoting Basic Controlex
Corp. v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir.
2000)).  "In determining whether a genuine issue of material
fact exists, [the court] construe[s] the evidence in the light
most favorable to the non-moving party and make[s] all
reasonable inferences in that party's favor."  Markel, 674 F.3d
at 30 (citing Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir.
2004)).

"The object of summary judgment is to 'pierce the
boilerplate of the pleadings and assay the parties' proof in

---

[2] As explained more fully below, the legal basis for
Bleish's two remaining claims, those asserted in Counts XVII and
XVIII, is not entirely clear.

order to determine whether trial is actually required.'" <u>Dávila v. Corp. de P.R. para la Diffusión Pública</u>, 498 F.3d 9, 12 (1st Cir. 2007) (quoting <u>Acosta v. Ames Dep't Stores, Inc.</u>, 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." <u>Sánchez-Rodríguez v AT&T Mobility P.R., Inc.</u>, 673 F.3d 1, 9 (1st Cir. 2012) (quoting <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006)). "However, 'a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden.'" <u>Sánchez-Rodríguez</u>, 673 F.3d at 9 (quoting <u>DePoutot v. Raffaelly</u>, 424 F.3d 112, 117 (1st Cir. 2005)). "Rather, the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim." <u>Sánchez-Rodríguez</u>, 673 F.3d at 9 (quoting <u>Soto-Ocasio v. Fed. Ex. Corp.</u>, 150 F.3d 14, 18 (1st Cir. 1998)) (internal quotation marks omitted).

Where, as here, the court is presented with cross motions for summary judgment, the summary judgment standard is applied to each motion separately.  See Am. Home Assur. Co. v. AGM Marine Contrs., Inc., 467 F.3d 810, 812 (1st Cir. 2006) (citing Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997)).  In other words, "[t]he presence of cross-motions for summary judgment neither dilutes nor distorts [the] standard of review."  Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006)).

## Background

Both plaintiff and defendants agree that the operative facts of this case are contained in three video recordings submitted to the court by agreement of the parties.  One of the recordings was made by Bleish.  The court has viewed all three. The following narrative is drawn from those recordings, as supplemented by other evidence in the summary judgment record.

On March 20, 2010, Patrolmen Matthew DiFava and Timothy MacIsaac of the Nashua Police Department ("NPD") arrested Lewis Labitue for possession of marijuana at a demonstration at Library Hill in Nashua.  Bleish recorded Labitue's arrest.  As she was doing so, she made various comments to the arresting officers, many of them phrased as questions.  They did not

respond.  As the officers escorted Labitue to their cruiser,
Bleish followed, both recording the arrest and continuing to
call out to the officers.  As the officers were putting Labitue
into their cruiser, Patrolman DiFava, who was directly in front
of Bleish, told the crowd:

> You guys need to get away from the police cruiser.
> OK?  It's disorderly conduct.  You're hindering a
> police investigation.  You have to get off the
> sidewalk.

The sidewalk to which Patrolman DiFava referred is located
directly adjacent to the curb of the street on which the cruiser
was parked.  After Patrolman DiFava warned the crowd to get away
from the cruiser, Bleish reached into it with her video camera,
through an open window, and engaged in a brief conversation with
Labitue.  Patrolman MacIssac then told Bleish to get out of the
car.  She did so.

After Patrolmen DiFava and MacIssac placed Labitue in their
cruiser, Patrolman DiFava attempted to drive away.  He was
blocked from doing so by several demonstrators, including
Nicholas Krouse, who had taken positions in the street, directly
in front of the cruiser.  Patrolman MacIsaac got out of the
cruiser, spoke with Krouse, and told him to get out of the road
or get arrested.  Krouse did not move, and Patrolman MacIsaac
began to place him in handcuffs.  Bleish, also standing in the

street, recorded the handcuffing at close range and continued speaking to the arresting officers.  As Krouse was being handcuffed, Patrolman MacIsaac was ordering the demonstrators to back up and get out of the road.  Then Officer DiFava said, directly in front of Bleish:

> Back up.  Get on the sidewalk now.  People are getting arrested.  You're getting in our space and you're hindering our investigation.

Bleish did not move to the sidewalk.

Thereafter, Patrolmen DiFava and MacIsaac moved Krouse from the front of the cruiser to the back, walking along the street side of the cruiser rather than on the sidewalk.  Bleish followed.  While kneeling at the back of the cruiser, Krouse asked someone to take a picture of his wrists.  Bleish moved in with her video camera and got the shot Krouse requested, from a foot or two away.  Then, when she saw Patrolman DiFava take a canister of pepper spray from his holster, Bleish yelled: "Do not mace him.  Stop it.  Stop it.  He's holding mace."

While the patrolmen were dealing with Krouse at the back of the cruiser, about a dozen demonstrators were out in the street surrounding the officers and their cruiser.  The next thing Bleish's recording shows, after a brief break, is Patrolman Todd Moriarty standing in the middle of the street, facing the

cruiser, with a police dog.[3]  At all times, Patrolman
Moriarty kept the dog between his legs, and held it tightly on a
short leash.  Bleish was standing with her back against the
cruiser, on the street side of the vehicle, at least five feet
away from Patrolman Moriarty and the dog.  Patrolman Moriarty,
addressing Bleish, said: "Get on the curb.  Get on the curb.
You're going to get arrested if you don't get on the curb."
Immediately thereafter, he told Officer Charles MacGregor: "Take
her into custody.  Lock her up right now."  Officer MacGregor
then arrested Bleish.  Officer Eric Walker transported Bleish to
the Nashua police station for booking.

When Officer MacGregor arrested Bleish, he placed her in
handcuffs, and allowed another demonstrator to take her video
camera.  Officer MacGregor and another officer escorted Bleish
to a cruiser, each one holding her on her upper arm with one
hand.  At the door of the cruiser, Bleish repeatedly asked the
officers to unhand her, stating that if they let her go, she
would comply with their orders.  They let go of her arms.

---

[3] One of the other video recordings shows Patrolman
Moriarty's arrival.  As soon as he got out of his vehicle with
the police dog, he began ordering the crowd to back up and get
out of the street.  Another NPD officer gave similar commands.

7

Bleish was charged with disorderly conduct, in violation of
N.H. Rev. Stat. Ann. ("RSA") § 644:2, II(d).  Her criminal
complaint alleged that she,

> [i]n a public place in said Nashua, known as Library
> Hill did knowingly engage in conduct which
> substantially interfered with a criminal investigation
> to wit: did position her body over Officer DiFava
> while Officer DiFava and Officer MacIsaac were
> attempting to arrest a subject and refused to comply
> with the lawful order of Officer Moriarty to desist
> and continued to interfere.

Pl.'s Mot. Summ. J., Ex. B (doc. no. 24-4), at 2.  After a bench
trial in the Nashua District Court, Bleish was acquitted.  In
his order, Judge Michael Ryan wrote:

> The defendant then positioned herself within two feet
> of the officers as they tried to pick up the arrested
> individual and move him to their cruiser.  It was the
> act of positioning herself so close to the officers
> that the State asserted at trial was how the defendant
> "knowingly engaged in conduct which substantially
> interfered with a criminal investigation."  The State
> introduced no evidence that the defendant "did
> position herself over Officer DiFava" while he and
> Officer MacIsaac were arresting the individual as
> alleged in the Complaint.  The Court finds that the
> State has failed to prove beyond a reasonable doubt
> that the defendant "substantially interfered" with a
> criminal investigation by the actions alleged in the
> Complaint.  The Court enters a finding of not guilty.
>
> The Court advises the defendant that while it
> must make a finding of not guilty based on the State's
> failure to meet its burden of proof beyond a
> reasonable doubt by the evidence presented that a
> crime was committed as alleged in the Complaint, the
> Court does not condone or approve of her actions.  By
> joining with other individuals to surround the
> officers and their cruiser and then by positioning

> herself extremely close to the officers as they made
> the arrest, the defendant helped to create a hostile
> and potentially very dangerous situation for all
> involved.

Pl.'s Mot. Summ. J., Ex. C (doc. no. 24-5), at 3.

Based on the foregoing, Bleish initially sued in eighteen
counts, five of which have already been dismissed.  See Order of
Dec. 9, 2011 (doc. no. 22) (dismissing claims brought under the
New Hampshire Constitution).  What remain, then, are Bleish's
claims that: (1) five officers of the NPD maliciously prosecuted
her in violation of the Fourth Amendment to the United States
Constitution (Count I); (2) five NPD officers used excessive
force against her in violation of the Fourth Amendment (Count
II); (3) five NPD officers violated her First Amendment rights
to free speech, freedom of the press, and freedom of assembly by
arresting her (Counts III-V); (4) five NPD officers are liable
for intentional infliction of emotional distress (Count XI),
false imprisonment (Count XII), assault (Count XIII), and
battery (Count XIV) under the common law of New Hampshire; (5)
NPD Chief Donald Conley is vicariously liable for the common-law
torts of the five NPD officers; (6) the City of Nashua ("City")
is vicariously liable for the common-law torts of Chief Conley
and the five NPD officers; (7) the City is liable for
negligently training and supervising Chief Conley and the five

9

NPD officers; and (8) Chief Conley and the NPD are liable for
negligently training and supervising the five NPD officers.

## Discussion

Both sides have moved for summary judgment on all of
Bleish's claims.  The court considers each claim in turn.

### A. Count I

Count I is Bleish's claim that Patrolmen Moriarty, DiFava,
and MacIsaac, and Officers MacGregor and Walker (hereinafter
"the defendant officers") violated her rights under the Fourth
Amendment by subjecting her to a criminal prosecution without
probable cause and with malice.  Specifically, she asserts that
"Defendants deprived [her] of her liberty when they arrested her
and initiated the Disorderly Conduct charge against her."
Compl. (doc. no. 1) ¶ 30.

Bleish argues that the undisputed facts establish all the
elements of a Fourth Amendment malicious-prosecution claim.
Defendants contend that: (1) the court of appeals for this
circuit has never held that the Fourth Amendment provides
protection against malicious prosecution; and (2) even if the
First Circuit were to determine that the Fourth Amendment
provides such protection, any formulation of a Fourth
Amendment malicious-prosecution claim would require a seizure

10

without probable cause, and here, there was probable cause for Bleish's arrest.  Bleish responds by pointing out the First Circuit has not foreclosed the legal theory on which Count I is based.

According to the court of appeals, "[i]t remains an unanswered question whether a malicious prosecution claim is cognizable under the Fourth Amendment."  Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010) (citing Wallace v. Kato, 549 U.S. 384, 390 n.2 (2007) ("[a]ssuming without deciding that such a claim is cognizable under § 1983 . . ."); Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001)).  In Harrington, the court of appeals "assume[d], without deciding, that malicious prosecution can embody a Fourth Amendment violation," 610 F.3d at 30, but resolved the question before it without saying what the elements of such a claim might be.  In Britton v. Maloney, the court of appeals assumed "that the type of conduct which constitutes a malicious prosecution under state law can sometimes constitute a violation of the Fourth Amendment as well."  196 F.3d 24, 28 (1st Cir. 1999) (citing Carey v. Piphus, 435 U.S. 247, 258 (1978)).

Under the common law of New Hampshire, "to prevail on a civil malicious prosecution claim, the plaintiff must prove: (1) that [she] was subjected to a civil proceeding instituted by the

defendant; (2) without probable cause; (3) with malice; and (4)
that the proceedings terminated in the plaintiff's favor." Paul
v. Sherburne, 153 N.H. 747, 749 (2006) (citing ERG, Inc. v.
Barnes, 137 N.H. 186, 190 (1993)). Regarding probable cause:

> It is well settled that in the context of a
> malicious prosecution claim, probable cause is defined
> as "such a state of facts in the mind of the
> prosecutor as would lead a [person] of ordinary
> caution and prudence to believe or entertain an honest
> and strong suspicion that the person arrested is
> guilty."

Paul, 153 N.H. at 749 (quoting Stock v. Byers, 120 N.H. 844, 846
(1980)). "Whether there was probable cause is ultimately . . .
a question of law to be determined by the court." Paul, 153
N.H. at 750 (citation omitted). Bleish's claim fails due to the
existence of probable cause for her prosecution.

Bleish argues that because her arrest was not supported by
probable cause, there was no probable cause for her prosecution.
As the court explains in detail its discussion of Count II,
infra, Bleish's arrest was supported by probable cause.
Accordingly, her argument is unavailing.

However, because the court's analysis of probable cause to
arrest focusses on RSA 644:2, II(e) rather than the offense for
which Bleish was prosecuted, the court turns to that statute.
Bleish was prosecuted for violating RSA 644:2, II(d), which
makes it unlawful for a person to "[e]ngage[ ] in conduct in a

public place which substantially interferes with a criminal

investigation."  In his report on the incident, Patrolman DiFava

described Bleish's conduct this way:

> While attempting to take Krouse into custody, I
> observed a female subject, later identified as
> Catherine Bleish, walking about in the roadway yelling
> at us.  Bleish had a video camera taping the incident
> and continuously walk[ed] towards us, <u>taking our
> attention away from Krouse</u> and interfering with our
> investigation.

Pl.'s Obj., Ex. E (doc. no. 30-6), at 2 (emphasis added).

Patrolman MacIsaac's report contains the following description

of Bleish's conduct:

> As the crowd became hostile people refused to comply
> with orders to remove themselves from the roadway and
> stay back from our vehicle as we attempted to leave
> the area.  After securing Labitue into our vehicle I
> observed a female later identified as Catherine Bleish
> . . . leaning inside the open window of the passenger
> side of our cruiser.  I approached Bleish and removed
> her from the passenger side window of our vehicle and
> told her to step back.  <u>Bleish</u> continued verbal abuse
> and <u>refused to step back</u>.

<u>Id.</u>, Ex. F (doc. no. 30-7), at 2 (emphasis added).  The video

recordings, on which Bleish relies to demonstrate a lack of

probable cause, show that, from the time Patrolmen DiFava and

MacIsaac started to arrest Labitue onward, Bleish: (1) directed

comments and questions to the patrolmen almost constantly, often

in a loud voice; (2) placed herself within two feet of the

patrolmen as they were taking Krouse into custody; and (3)

followed them around in the street, after being given multiple
lawful orders to get out of the street and onto the sidewalk, at
least one of which included a statement that failure to comply
would constitute interference with a police investigation.[4]

Based on the undisputed factual record, the court
concludes that a person "of ordinary caution and prudence,"
<u>Paul</u>, 153 N.H. at 749, in the position of the prosecutor,
would have "believe[d] or entertain[ed] an honest and
strong suspicion that [Bleish was] guilty," <u>id.</u>, of
"[e]ngag[ing] in conduct in a public place which
substantially interfere[d] with a criminal investigation,"
RSA 644:2, II(d).  Because there was probable cause to
prosecute Bleish for violating RSA 644:2, II(d), she is not
entitled to summary judgment on Count I.

The defendant officers, however, are entitled to summary
judgment on Count I.  As a preliminary matter, the court is not
convinced that the Fourth Amendment offers protection against
malicious prosecution.  While Bleish points out that the First
Circuit has not rejected the kind of claim she asserts in Count
I, she advances no argument that the court would recognize such
a claim, nor has she directed this court to any decisions from

_____

[4]  It is also beyond dispute that Bleish reached into a
police cruiser after having been told to stay away from it.

14

other courts in which such claims have been either recognized or described.  So, this court is in no position to predict what the First Circuit might do if presented with the question whether to recognize the kind of claim Bleish asserts in Count I.  That, alone, is reason enough to grant summary judgment to the defendant officers.

But, there is another reason to grant them summary judgment.  That reason, while not advanced by defendants, comes directly from Harrington, the only federal case Bleish cites in support of the proposition that she can bring a malicious-prosecution claim under the Fourth Amendment.  In Harrington, after assuming that the Fourth Amendment offers protection against malicious prosecution, the court went on to say:

> To succeed in maintaining a section 1983 claim for malicious prosecution, a plaintiff must show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure.  Nieves, 241 F.3d at 54; Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999); Singer v. Fulton County Sheriff, 63 F.3d 110, 116–17 (2d Cir. 1995).  In the typical situation, the requisite legal process "comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)."  Nieves, 241 F.3d at 54.

610 F.3d at 30.  Like the plaintiff in Harrington, see id. at 31, Bleish was not arrested pursuant to a warrant.  Regarding

the import of warrantless arrests in the context of malicious-prosecution claims, the court of appeals explained:

> Where, as here, a person is arrested without a warrant and before the issuance of any legal process, that arrest does not form part of a Fourth Amendment seizure upon which a section 1983 malicious prosecution claim may be premised.  See <u>Nieves</u>, 241 F.3d at 54; <u>see also</u> <u>Singer</u>, 63 F.3d at 117 (holding that the plaintiff's arrest "cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not 'pursuant to legal process' ").  In the last analysis, the plaintiff "cannot base a malicious prosecution claim on [her] warrantless arrest, because it did not constitute legal process." <u>Meehan v. Town of Plymouth</u>, 167 F.3d 85, 90 (1st Cir. 1999).
>
> This leaves the plaintiff with the task of showing some post-arraignment deprivation of liberty that amounts to a Fourth Amendment seizure.  <u>See</u> <u>Nieves</u>, 241 F.3d at 54; <u>Singer</u>, 63 F.3d at 117.

<u>Id.</u> at 32.  Presumably because Bleish asserts, erroneously, that her warrantless arrest was a seizure on which she can properly base a Fourth Amendment claim, <u>see</u> Compl. ¶ 9, her complaint includes no factual allegations concerning her arraignment or any post-arraignment deprivations.  Her interrogatory answers do mention various pre-trial inconveniences and expenses she incurred, <u>see</u> Pl.'s Mot. Summ. J., Ex. G (doc. no. 24-9), at 4-6, but as <u>Harrington</u> makes quite clear, none of those inconveniences qualify as seizures for Fourth Amendment purposes, <u>see</u> 610 F.3d at 32-33.  Because Bleish has not even

16

identified, much less produced evidence of, a Fourth Amendment seizure, the defendant officers are entitled to judgment as a matter of law on Count I.

### B. Count II

In Count II, Bleish asserts that the defendant officers violated her Fourth Amendment rights in a different way:

> Defendant Officers willfully, wantonly, and with evil motive, used <u>excessive force</u> in arresting the Plaintiff by arresting her without probable cause to do so.
>
> Use of <u>excessive force</u> in effecting an arrest is a violation of the Fourth Amendment to the U.S. Constitution as applied to the States through the Fourteenth Amendment to the U.S. Constitution.
>
> As a proximate result of Defendants' willful and wanton use of <u>excessive force</u> by the Defendant Officers, done with evil motive, the Plaintiff has suffered damages such as legal fees and costs, pain and suffering, and further losses as more fully set forth in the Prayer for Relief.

Compl. ¶¶ 35-37 (emphasis added).[5]  Based on the language of Bleish's complaint, Count II cannot be construed as anything other than a Fourth Amendment excessive-force claim.  In support of her motion for summary judgment, Bleish advances the following argument:

---

[5] Count II bears the following heading: "Defendant Officers Unreasonably Seized Plaintiff by using <u>Excessive Force</u> in Violation of the Fourth Amendment to the U.S. Constitution as Applied to the States Through the 14th Amendment."  Compl., at 6 (emphasis added).

>       Miss Bleish's arrest was not grounded in probable
> cause, and therefore, violated her right to be free
> from unreasonable seizures.  Therefore, she is
> entitled to judgment as to Count II of her Complaint.
> . . .  An unlawful arrest is per se excessive force.
> See Williamson v. Mills, 65 F.3d 155, 158 (11th Cir.
> 1995).

Pl.'s Mem. of Law (doc. no. 24-2), at 8.  In their objection,

defendants point out, correctly, that Williamson does not stand

for the proposition that a police officer uses excessive force,

for Fourth Amendment purposes, simply by making an arrest

without probable cause.  Defendants continue:

>       In fact, when an officer makes an arrest even without
> probable cause "but uses no more force than would have
> been reasonably necessary if the arrest and detention
> was warranted, the Plaintiff has a claim for unlawful
> arrest or detention but not an additional claim for
> excessive force."

Defs.' Obj. (doc. no. 29), at 11 (quoting Levy v. Lique, No. 10-

cv-374-PB, 2012 WL 1600174, at *4 (D.N.H. May 7, 2012) (emphasis

added by defendants); citing Cortez v. McCauley, 478 F.3d 1108,

1126 (10th Cir. 2007)).[6]

     In support of their motion for summary judgment, defendants

argue that the video recordings of Bleish's arrest demonstrate

that the officers who arrested her used an objectively

reasonable amount of force.  In her objection, Bleish says

---

[6] To similar effect are Freeman v. Gore, 483 F.3d 404, 417
(5th Cir. 2007), and Bashir v. Rockdale County, 445 F.3d 1323,
1332 (11th Cir. 2006).

nothing about the amount of force that was used to arrest her.
Rather, she attempts to resist summary judgment on Count II by
arguing that: (1) there was no probable cause for her arrest;
and (2) Williamson stands for the proposition that "[w]hen there
is no lawful basis for an arrest, the arrest is per se an
unreasonable seizure," Pl.'s Obj. (doc. no. 30-1), at 11.

Based on her response to defendants' summary-judgment
motion, Bleish appears to have abandoned, or at least revised,
her excessive-force claim, arguing that Count II should survive
because defendants are liable for false arrest.  If Bleish
wanted to assert a Fourth Amendment false-arrest claim, she was
free to do so in her complaint, and she has been equally free to
move to amend her complaint to add such a claim.  But, for
purposes of summary judgment, Count II is limited to the claim
asserted in Bleish's complaint, which is, unambiguously, an
excessive-force claim.

Bleish is not entitled to judgment as a matter of law on
Count II on the theory she advances in her summary-judgment
motion.  Even if the defendant officers lacked probable cause
for Bleish's arrest, the lack of probable cause – which is the
sole factual basis for Count II – is insufficient, standing
alone, to establish that the arresting officers used excessive
force.  See Levy, 2012 WL 1600174, at *4.  Accordingly, Bleish

is not entitled to summary judgment on her excessive-force claim.

The defendant officers, however, are entitled to judgment as a matter of law on that claim.

> Excessive force claims are founded on the Fourth Amendment right to be free from unreasonable seizures of the person.  See U.S. Const. amend. IV; Graham v. Connor, 490 U.S. 386, 394-95 (1989).  The Fourth Amendment is implicated where an officer exceeds the bounds of reasonable force in effecting an arrest or investigatory stop.  See Graham, 490 U.S. at 394-95.

Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010).  "To make out a claim of excessive force, the standard is whether the force used was unreasonable under the circumstances."  Soto-Torres v. Fraticelli, 654 F.3d 153, 158 n.6 (1st Cir. 2011) (citing Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007); Mlodzinski v. Lewis, 648 F.3d 24 (1st Cir. 2011)).  In turn, "[t]he reasonableness inquiry is objective, to be determined 'in light of the facts and circumstances confronting [the officers] without regard to their underlying intent or motivation.'" Jennings, 499 F.3d at 11 (quoting Graham, 490 U.S. at 397).

The amount of force the arresting officers used to arrest Bleish is documented by the three video recordings which, the parties agree, fairly and accurately depict the events at Library Hill.  When Bleish was arrested, she was placed in handcuffs and two officers walked her to their cruiser.  Each

officer placed one of his hands on Bleish's upper arm.  At
summary judgment, when a Fourth Amendment excessive-force claim
is under consideration, and the relevant facts have been
properly established, the reasonableness of an officer's use of
force is "a pure question of law."  Scott v. Harris, 550 U.S.
372, 381 n.6 (2007).  Here, the court concludes that the minimal
amount of force used by the officers who arrested Bleish was
reasonable.  Bleish does not argue to the contrary.  Because the
amount of force used to arrest Bleish was reasonable, the
defendant officers are entitled to judgment as a matter of law
on Count II.

    That said, the court notes that Bleish would fare no better
if Count II were construed to assert a Fourth Amendment
violation based on false arrest rather than the use of excessive
force.  "The Fourth Amendment requires that an arrest be
grounded in probable cause."  Glik v. Cunniffe, 655 F.3d 78, 85
(1st Cir. 2011) (citing Martínez-Rodríguez v. Guevara, 597 F.3d
414, 420 (1st Cir. 2010)).  Thus, "[w]hen there is probable
cause for an arrest, the Fourth Amendment's prohibition against
unreasonable searches and seizures is not offended."  Collins v.
Univ. of N.H., 664 F.3d 8, 14 (1st Cir. 2011) (quoting Acosta,
386 F.3d at 9.

> "Probable cause exists when police officers,
> relying on reasonably trustworthy facts and
> circumstances, have information upon which a
> reasonably prudent person would believe the suspect
> had committed or was committing a crime." United
> States v. Young, 105 F.3d 1, 6 (1st Cir. 1997).
> Probable cause "does not require the quantum of proof
> necessary to convict." United States v. Miller, 589
> F.2d 1117, 1128 (1st Cir. 1978).

United States v. Pontoo, 666 F.3d 20, 31 (1st Cir. 2011).  In

addition,

> "The question of probable cause . . . is an
> objective inquiry," and [the court] do[es] not
> consider the "'actual motive or thought process of the
> officer.'" Holder v. Town of Sandown, 585 F.3d 500,
> 504 (1st Cir. 2009) (internal citation omitted)
> (quoting Bolton v. Taylor, 367 F.3d 5, 7 (1st Cir.
> 2004)); see also Whren v. United States, 517 U.S. 806,
> 813 (1996) ("Subjective intentions play no role in
> ordinary, probable-cause Fourth Amendment analysis.").
> Instead of considering any subjective motive of an
> individual officer, "we must view the circumstances
> from the perspective of a reasonable person in the
> position of the officer." Holder, 585 F.3d at 504.

Kenney v. Head, 670 F.3d 354, 358 (1st Cir. 2012) (parallel

citations omitted).

To the general principles outlined above, the court adds

two more specific ones.  First,

> the probable cause inquiry is not necessarily based
> upon the offense actually invoked by the arresting
> officer but upon whether the facts known at the time
> of the arrest objectively provided probable cause to
> arrest. Devenpeck v. Alford, 543 U.S. 146, [153]
> (2004).  Thus it is irrelevant that the booking
> officer cited Jones for "intent to rob while armed."
> If, on the facts known to the arresting officers,

there was probable cause to believe he was committing
another crime, the arrest was valid.

United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005)

(parallel citations omitted).  Second, probable-cause

determinations generally may be based on the collective

knowledge of all the police officers involved, not just the

knowledge of the specific officer(s) who took a person into

custody.  See United States v. Verdugo, 617 F.3d 565, 573 (1st

Cir. 2010) (citing United States v. Pardue, 385 F.3d 101, 106-07

(1st Cir. 2004)).

In support of her motion for summary judgment, Bleish

argues that she is entitled to judgment as a matter of law on

Count II because: the officers who arrested her lacked probable

cause to believe that she violated RSA 644:2, II(d);[7] and (2) as

a result, "they violated her Fourth Amendment Right to be free

from Unreasonable Seizures when they arrested her as her arrest

was per se excessive."  Pl.'s Mem. of Law (doc. no. 24-2), at

10.  In response, defendants contend that the collective

knowledge of the NPD officers at Library Hill gave them probable

cause to arrest Bleish for violating RSA 644:2, II(d), the crime

---

[7] Under that statute, "[a] person is guilty of disorderly
conduct if: . . . [h]e or she . . . [e]ngages in conduct in a
public place which substantially interferes with a criminal
investigation . . ."  RSA 644:2, II(d).

with which she was charged, and for violating RSA 644:2, II(e),
which makes it unlawful for a person to "[k]knowingly refuse[ ]
to comply with a lawful order of a peace officer to move from or
remain away from any public place."  In her objection to
defendants' motion for summary judgment, Bleish does not respond
in any substantive way to defendants' argument that there was
probable cause to arrest her for violating RSA 644:2, II(e),[8] and
she does not address defendants' invocation of the collective-
knowledge doctrine.

At the time Bleish was arrested, the NPD officers on the
scene had probable cause to believe that she had violated RSA
644:2, II(e).  Relatively early in the incident, when Patrolmen
DiFava and MacIssac were placing Labitue in their cruiser, they
were directing the crowd, including Bleish, to move away from
the cruiser and get out of the street.[9]  Such lawful orders were

_____

[8] In the statement of disputed facts in her objection to
defendants' motion for summary judgment, Bleish seems to
challenge defendants' statement that DiFava instructed her to
leave, but she does not follow up with any actual argument
disputing the existence of probable cause for an arrest under
RSA 644:2, II(e).

[9] In her statement of disputed facts, Bleish says: "although
the Defendants state that DiFava instructed Catherine to leave,
he never actually spoke to Catherine."  Pl.'s Mem. of Law (doc.
no. 30-1), at 2.  According to Bleish, Patrolman DiFava was
actually speaking to Mike Tiner, who was standing next to her.
In the portion of Bleish's video recording that contains the
statements by Patrolman DiFava reported on page 5, DiFava's face

repeated several times, by several different officers as the incident unfolded.  One of those officers, in turn, called in Patrolman Moriarty to assist them.  Once Patrolman Moriarty arrived with the dog, he and the officer with him began directing the crowd to get out of the street.  By the time Patrolman Moriarty instructed Patrolman MacGregor to take Bleish into custody, she had disobeyed approximately a half dozen lawful orders to move away from the police cruiser and get out of the street, and had done so in plain view of several different NPD officers.  Therefore, the officers who arrested Bleish had probable cause to believe that she was in violation of RSA 644:2, II(e), at the time she was taken into custody. Thus, her arrest did not violate the Fourth Amendment.

### C. Counts III-V

In Counts III through V, Bleish asserts that by arresting her, the defendant officers violated her First Amendment rights to free speech, freedom of the press, and free assembly.  In support of her motion for summary judgment, in the context of

---

nearly fills the entire screen, and one of the other video recordings submitted by the parties shows Bleish holding her camera less than twelve inches from Patrolman DiFava's face when he made that statement.  Moreover, Patrolman DiFava addressed himself not to Tiner, but to "you guys," a group that necessarily included Bleish.  Thus, no reasonable jury could conclude that Patrolman DiFava did not tell Bleish to back up and move onto the sidewalk.

her First Amendment claims, Bleish argues that "[b]ecause [she] was lawfully engaged in First Amendment activity, and acted within the bounds of reasonable time, place, and manner restrictions, the Defendants violated her First Amendment rights, by arresting her, charging her, and prosecuting her for engaging in that activity."  Pl.'s Mem. of Law (doc. no. 24-2), at 7-8.  Subsequently, in the context of her Fourth Amendment claims, and under the heading "The Defendants Unlawfully Charged Miss Bleish with Disorderly Conduct for Engaging in Protected First Amendment Activity," her argument continues:

> Miss Bleish was engaged in specially protected First Amendment activity, and could not be subject to a Disorderly Conduct charge for doing so.  . . .  As discussed above, even subjecting her First Amendment activities to "reasonable, time, place and manner restrictions" she acted within those boundaries. Therefore, the Defendants could not have charged Miss Bleish with Disorderly Conduct because the crime could not attach because she was lawfully exercising specially protected First Amendment Activities. Therefore, she is entitled to judgment as a matter of law as to Count II of her Complaint.

Id. at 8-9.  In her objection to defendants' motion for summary judgment, Bleish makes essentially the same argument, but concludes it a bit differently: "the Defendants could not have arrested Catherine for Disorderly Conduct because Moriarty could not have had probable cause to arrest Catherine because she was

lawfully exercising specially protected First Amendment Activities."  Pl.'s Mem. of Law (doc. no. 30-1), at 11-12.

The fatal flaw in all three of Bleish's First Amendment claims is that she has produced no evidence that she was arrested for exercising her First Amendment rights.  The video recordings do show that she was arrested while she was engaged in activities that are ordinarily protected by the First Amendment,[10] but being arrested <u>while</u> exercising constitutional rights is very different from being arrested <u>for</u> exercising those rights.  That distinction is well illustrated by <u>Glik v. Cunniffe</u>, an opinion on which Bleish places substantial reliance.

In <u>Glik</u>, the plaintiff "was arrested for using his cell phone's digital video camera to film several police officers arresting a young man on the Boston Common."  655 F.3d at 79. Glik's arrest took place in the following circumstances:

> Concerned that the officers were employing excessive force to effect the arrest, Glik stopped roughly ten feet away and began recording video footage of the arrest on his cell phone.
>
> After placing the suspect in handcuffs, one of the officers turned to Glik and said, "I think you have taken enough pictures."  Glik replied, "I am

---

[10] For purposes of resolving the motions before it, the court assumes that all of Bleish's speech during the incident and her recording of the incident are protected to the fullest extent possible under the First Amendment.

27

recording this.  I saw you punch him."  An officer
then approached Glik and asked if Glik's cell phone
recorded audio.  When Glik affirmed that he was
recording audio, the officer placed him in handcuffs,
arresting him for, inter alia, unlawful audio
recording in violation of Massachusetts's wiretap
statute.  Glik was taken to the South Boston police
station.  In the course of booking, the police
confiscated Glik's cell phone and a computer flash
drive and held them as evidence.

Id. at 79-80 (footnote omitted).  Plainly, the plaintiff in Glik

was arrested for exercising his First Amendment right to record

the actions of several police officers.  Here, by contrast, the

officers who arrested Bleish said nothing about her video

recording at the time of her arrest, and did not mention her

video recording in the criminal complaint they swore out against

her.  Rather than taking her camera, as the officers did in

Glik, they helped her pass it along to another of the

demonstrators, for safekeeping, as they were placing her in

handcuffs.  In sum, there is no direct evidence that Bleish's

First Amendment activities played any part in the NPD officers'

decision to arrest her.

In her objection to defendants' motion for summary

judgment, in the context of her discussion of standing, Bleish

argues:

Moriarty ordered Catherine's arrest and MacGregor
arrested her.  The Defendants subsequently prosecuted her
for engaging in lawful activity, including, lawfully
exercising her First Amendment rights.  Further, despite

28

> other people also being in the street, Catherine was the
> only person in the street with a video camera, and thus,
> the only person arrested.

Pl.'s Mem. of Law (doc. no. 30-1), at 10 (citations to the record

omitted).  There are several problems with that argument.

Factually, Bleish's own video recording shows that as Labitue

and Krouse were being arrested, at least four other people were in

the street with video recording devices.  Moreover, Bleish takes a

rather large logical leap by suggesting that her possession of a

video camera was the reason for her arrest.  Even if she was, at

the time of her arrest, the only demonstrator in the street with a

camera, she was also: (1) further out in the street, and closer to

Patrolman Moriarty, than any of the other demonstrators; and (2)

among the most persistent of the demonstrators in terms of crowding

Officers DiFava and MacIsaac as they were attempting to arrest

Krouse.  Given Bleish's continuing failure to follow the officers'

lawful orders to get out of the street, and the various ways in

which she stood out from the crowd, there is no logical basis for

arguing that she was arrested because she was recording the arrests

of Labitue and Krouse.  In light of the NPD officers' total lack of

comment about either Bleish's commentary on their actions or her

recording activities, her attempt to draw an inference from a

single point of evidence, while ignoring multiple points of

evidence that undermine her position, makes her argument that she

was arrested for exercising her First Amendment rights ineffectual,

as a matter of law.  That is, on the record evidence, no reasonable
jury could find that Bleish was arrested for exercising her First
Amendment rights.

Returning to Glik, in its decision affirming the trial
court's denial of the defendants' motion to dismiss, in which
they asserted a qualified-immunity defense, the court of appeals
noted that "the right to film . . . may be subject to reasonable
time, place, and manner restrictions."  Glik, 655 F.3d at 84
(citing Smith v. City of Cumming, 212 F.3d 1332, (11th Cir.
2000)).  The court then further described the circumstances
leading up to Glik's arrest:

> [A]s in Iacobucci [v. Boulter], the complaint
> indicates that Glik "filmed [the officers] from a
> comfortable remove" and "neither spoke to nor molested
> them in any way" (except in directly responding to the
> officers when they addressed him).  193 F.3d [14,] 25
> [(1st Cir. 1999)].  Such peaceful recording of an
> arrest in a public space that does not interfere with
> the police officers' performance of their duties is
> not reasonably subject to limitation.

Glik, 655 F.3d at 84.  Here, by contrast, the video evidence
demonstrates that Bleish recorded the officers from
substantially less than the ten feet the Glik court described as
being "a comfortable remove."  She generally placed herself
within two feet of the officers, or closer, and at one point,
she placed her video camera less than a foot away from Patrolman
DiFava's face.  Earlier in the incident, after having been

30

directed to move away from the police cruiser, Bleish reached into it.  Finally, unlike Glik, Bleish spoke to the officers throughout the entire incident, frequently asking them questions.  And, she spoke to them rather loudly, from a foot or two away, as they were attempting to take Krouse into custody, a task that presumably required considerable attention, as he was resisting arrest.

Moving beyond the distinctions between this case and Glik, Bleish acknowledges that the government may lawfully condition the exercise of First Amendment rights through the imposition of reasonable time, place, and manner restrictions.  Moreover, she steadfastly insists that at all time relevant to this action, she "was lawfully engaged in specially protected First Amendment activity, and acted within the bounds of reasonable time, place, and manner restrictions."  Pl.'s Mem. of Law (doc. no. 30-1), at 10.

Bleish's claim of being "lawfully engaged" in First Amendment activity is difficult to square with her failure to abide by multiple orders, from multiple police officers, to get away from the cruiser and get out of the street.  She was, in fact, arrested while standing in the street with her back against the cruiser.

31

As for Bleish's assertion that she "acted within the bounds of reasonable time, place, and manner restrictions," she appears to focus almost exclusively on: (1) the fact that she never touched either Krouse or the officers arresting him; and (2) her belief that she never physically interfered with Krouse's arrest because it took her only a few seconds to lean in and photograph his wrists.  In her view, the relevant time, place, and manner restriction is the principle that "[i]ndividuals have the right to video record and challenge law enforcement activities so long as they do not impair the officers' work."  Pl.'s Mem. of Law (doc. no. 24-2), at 6 (citing Glik, 655 F.3d at 84).

As for what might impair a police officer's work, the United States Supreme Court has provided a relevant example, in an opinion on which Bleish relies:

> [T]oday's decision does not leave municipalities powerless to punish physical obstruction of police action.  For example, Justice Powell states that "a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection."  We agree, however, that such conduct might constitutionally be punished under a properly tailored statute, such as a disorderly conduct statute that makes it unlawful to fail to disperse in response to a valid police order or to create a traffic hazard.  E.g., Colten v. Kentucky, 407 U.S. 104 (1972).  What a municipality may not do, however, and what Houston has done in this case, is to attempt to punish such conduct by broadly criminalizing speech directed to an officer—in this

32

> case, by authorizing the police to arrest a person who
> in <u>any</u> manner verbally interrupts an officer.

<u>City of Houston v. Hill</u>, 482 U.S. 451, 463 n.11 (1987)

(citations omitted).  Here, of course, Bleish was not arrested

for verbally interrupting an officer and, as explained above,

her arrest was supported by probable cause to believe that she

had violated  "a disorderly conduct statute that makes it

unlawful to fail to disperse in response to a valid police

order," <u>id.</u>

Hill also points up the principal deficiency in Bleish's

argument.  She focusses narrowly on the time frame surrounding

Krouse's arrest and fact that she did not touch the arresting

officers.  Beyond that, she fails to recognize, as reasonable

time, place, and manner restrictions, the NPD officers' repeated

orders, repeatedly ignored, that she and the other demonstrators

move away from the cruiser and get out of the street.  Those

were valid time, place, and manner restrictions with which

Bleish demonstrably failed to comply.

There is no need to further belabor the point.  Based on

the undisputed factual record, no reasonable jury could conclude

that Bleish was arrested for exercising her rights to free

speech, freedom of the press, or free assembly.  Accordingly,

she is not entitled to judgment as a matter of law on the claims
she asserts in Counts III, IV, and V.  Defendants are.

   D. Count XI

   In Count XI, Bleish asserts that the defendant officers are
liable for intentional infliction of emotional distress because
"they threatened her with the German Shepherd, arrested her,
booked her, and subjected her to criminal prosecution, as a
result of her exercising her Constitutional rights, even after
her repeated pleas that they stop."  Compl. ¶ 76.  In support of
her motion for summary judgment, she argues that there is no
genuine dispute that the defendant officers are liable to her
for intentional infliction of emotional distress.  In their
objection, and in support of their own motion for summary
judgment, defendants contend that based on the undisputed
factual record, Bleish cannot establish that the defendant
officers' conduct was sufficiently outrageous to support her
claim.  The court agrees.

   "In order to make out a claim for intentional infliction of
emotional distress, a plaintiff must allege that a defendant 'by
extreme and outrageous conduct, intentionally or recklessly
cause[d] severe emotional distress to another.'"  Tessier v.
Rockefeller, 162 N.H. 324, 341 (2011) (quoting Morancy v.

34

Morancy, 134 N.H. 493, 496 (1991)).  Regarding the severity of

the conduct necessary to support such a claim, the Tessier court

explained:

> "In determining whether conduct is extreme and
> outrageous, it is not enough that a person has acted
> with an intent which is tortious or even criminal, or
> that he has intended to inflict emotional distress, or
> even that his conduct has been characterized by
> malice."  Mikell v. Sch. Admin. Unit No. 33, 158 N.H.
> 723, 729 (2009) (citation and quotations omitted).
> Rather, "[l]iability has been found only where the
> conduct has been so outrageous in character, and so
> extreme in degree, as to go beyond all possible bounds
> of decency, and to be regarded as atrocious, and
> utterly intolerable in a civilized community."  Id.

162 N.H. at 341.  With those legal principles in mind, the court

turns to Bleish's claim.

Bleish bases her claim on four acts by the defendant

officers: their use of the police dog, her arrest, her booking,

and her prosecution.  Her arrest was based on probable cause,

which make the arrest, her subsequent booking, and her

prosecution for disorderly conduct all lawful.  See Collins, 664

F.3d at 14 (explaining that arrests supported by probable cause

do not offend the Fourth Amendment); Hogan, 121 N.H. at 739

(identifying lack of probable cause as an element of a common-

law malicious-prosecution claim).  The defendant officers'

lawful conduct obviously falls well short of being sufficiently

outrageous and extreme to "go beyond all possible bounds of

35

decency," Tessier, 162 N.H. at 341.  Thus, that conduct cannot support a claim for intentional infliction of emotional distress.

All that remains is Patrolman Moriarty's use of the police dog.  Based on review of the video recordings, the court concludes, as a matter of law, that Patrolman Moriarty did not deploy his police dog in a way that is "utterly intolerable in a civilized community," Tessier, 162 N.H. at 341.  The video recordings show that when Patrolman Moriarty arrived on the scene with his police dog, he and his partner repeatedly ordered the demonstrators to get out of the street.  Patrolman Moriarty had the dog under tight control at all times, kept it at least five feet away from Bleish, and did not sic the dog on her. Bleish may well have been subjectively scared of the dog, but the objective evidence shows that the dog merely barked at the demonstrators.  In short, there is nothing in the way that Patrolman Moriarty handled his police dog that would support a claim for intentional infliction of emotional distress.

Because none of the conduct on which Bleish bases her claim for intentional infliction of emotional distress was extreme or outrageous, Bleish is not entitled to judgment as a matter of law on Count XI, and the defendant officers are.

E. Count XII

Count XII is a claim for false imprisonment.  Bleish argues
that she is entitled to summary judgment on Count XII because
the defendant officers' lack of probable cause to arrest her
rendered her subsequent confinement unlawful.  Defendants argue
that Count XII necessarily fails due to the existence of
probable cause to arrest Bleish.

In New Hampshire, "[f]alse imprisonment is the unlawful
restraint of an individual's personal freedom."  MacKenzie v.
Linehan, 158 N.H. 476, 482 (2009) (citing Hickox v. J.B. Morin
Agency, Inc., 110 N.H. 438, 442 (1970)).  To prevail on her
claim for false imprisonment, Bleish must

> show that: (1) [the] defendant [officers] acted with
> the intent of confining [her] within boundaries fixed
> by [the] defendant [officers]; (2) [the] defendant
> [officers'] act[s] directly or indirectly resulted in
> [her] confinement; (3) [she] was conscious of or
> harmed by the confinement; and (4) [the] defendant
> [officers] acted without legal authority.

MacKenzie, 158 N.H. at 482 (citing Restatement (Second) of Torts
§ 35 (1965); Welch v. Bergeron, 115 N.H. 179, 181 (1975)).
Indeed, "[a]n essential element of the [claim] is the absence of
valid legal authority for the restraint imposed."  Mackenzie,
158 N.H. at 482 (quoting Welsh, 115 N.H. at 181).

Here, as explained above, the defendant officers had
probable cause to arrest Bleish, as a matter of law.  Thus,

37

Bleish has failed to establish the fourth element of her false imprisonment claim, which means that she is not entitled to summary judgment on Count XII.  Moreover, because Bleish cannot establish that element under any circumstances, the defendant officers are entitled to judgment as a matter of law on Count XII.

F. Counts XIII & XIV

Bleish asserts claims for common-law assault[11] (Count XIII) and common-law battery[12] (Count XIV).  In support of her motion for summary judgment, she argues that "the Defendant Officers exceeded the scope of their authority, if any, by using excessive force on Miss Bleish, as the arrest itself was unlawful and therefore, not reasonably necessary to effect the arrest."  Pl.'s Mem. of Law (doc. no. 24-2), at 18.  Defendants contend that Bleish's claims for assault and battery fail because the defendant officers had probable cause to arrest her.

---

[11] The elements of common-law assault are: "an attempt or offer to beat another, without touching [her]; as if one lifts up his cane, or his fist, in a threatening manner at another; or strikes at [her] but misses [her]."  8 Richard B. McNamara, New Hampshire Practice, Personal Injury – Tort and Insurance Practice § 3.12, at 3-8 (3d ed. 2003).

[12] The elements of common-law battery are: "the unlawful beating of another."  8 McNamara, supra, § 3.13, at 3-9.

As a preliminary matter, the court notes that Counts XIII and XIV, as pled, are not sufficient to withstand a motion to dismiss.  The claims asserted in those counts are nothing more than "naked assertions devoid of further factual enhancement [which] need not be accepted."  Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009)); see also United Auto. Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) ("[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do' ") (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  That is reason enough to grant defendants' motion for summary judgment.

But, beyond that, Bleish's claims fail on the merits.  She says the defendant officers are liable for battery because they touched her while effecting an unlawful arrest.  The arrest, however, was supported by probable cause, which made it lawful.  The lawfulness of the arrest, in turn, allowed the arresting officers to "use[ ] non-deadly force . . . to the extent that [they] reasonably believe[d] it necessary to effect [Bleish's] arrest."  RSA 627:5, I.  Here, the arresting officers, while affecting a lawful arrest, used only as much force as was

reasonably necessary to take Bleish into custody.[13]  No

reasonable jury could reach a contrary conclusion.  Accordingly,

the defendant officers are entitled to judgment as a matter of

law on Bleish's battery claim (Count XIV).  Moreover, as assault

consists of a threatened or attempted battery, there was no

battery in this case, and the defendant officers did not

threaten to use any more force than they actually used, no

threat they made could possibly qualify as an assault.

Accordingly, the defendant officers are also entitled to

judgment as a matter of law on Bleish's assault claim (Count

XIII).

    G. Counts XV & XVI

    In Counts XV and XVI, Bleish seeks to hold Chief Conley and

the City of Nashua vicariously liable for the tortious conduct

of the defendant officers.  Because the defendant officers

committed no torts against Bleish, Chief Conley is entitled to

judgment as a matter of law on Count XV and the City is entitled

to judgment as a matter of law on Count XVI.

---

    [13] While its opinion on the demeanor of the officers
involved in this incident has no bearing on the legal issues in
this case, the court cannot help but note the high degree of
professionalism exhibited by all the officers depicted in the
three video recordings.  They remained calm at all times and
never responded to the various provocations directed to them by
various members of the crowd, including Bleish.

H. Counts XVII & XVIII

Counts XVII and XVIII assert claims for negligent training and supervision.  Specifically, Bleish asserts in Count XVII that the "City failed to properly train and supervise the Defendant Officers and Defendant Conley," Compl. ¶ 98, and she asserts in Count XVIII that Chief Conley and the NPD "failed to train and supervise the Defendant Officers," Compl. ¶ 102. Neither count, however, offers anything more in the way of specifics, which causes the court to wonder whether the claims stated therein could survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See United Auto. Workers, 633 F.3d at 41; Plumbers' Union, 632 F.3d at 771.

Moreover, Bleish's failure to identify any specific legal authority in Counts XVII and XVIII creates considerable confusion as to whether she is asserting common-law negligence claims or federal claims under the doctrine established in Monell v. Department of Social Services, 436 U.S. 658, 692 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government entity is responsible under § 1983.").

41

Defendants have construed Counts XVII and XVIII as asserting common-law negligence claims, an interpretation that is bolstered by: (1) the overall organization of the complaint, in which Counts I through V assert federal constitutional claims by means of § 1983, Counts VI through X assert state constitutional claims, and Counts XI through XVI assert state common-law claims; (2) Bleish's failure to mention any federal right in Counts XVII and XVIII, while she did specify the federal rights on which Counts I-V are based; (3) Bleish's failure to allege facts concerning any policy or custom in Counts XVII and XVIII; (4) Bleish's inclusion of Chief Conley, who is not a municipality, as a defendant in the purported Monell claim asserted in Count XVIII; and (5) Bleish's use of the term "negligent training and supervision" to describe the conduct on which Counts XVII and XVIII are based.  In her memorandum of law, Bleish says that Counts XVII and XVIII are Monell claims and identifies the following policy: "The Defendant PD maintains a policy allowing their officers to arrest people without warrants based upon reasonable grounds that the person was committing or about to commit a misdemeanor-level offense."[14]  Pl.'s Mem. of Law (doc. no. 24-2), at 21.  In

---

[14] Indeed, Bleish has produced evidence that the NPD S.O.P. for warrantless arrests provides that "[a]n arrest without a

Bleish's view, her federal constitutional rights were violated
by the arresting officers' execution of that policy.

The most obvious problem with Bleish's argument is that,
for the reasons explained above, she has suffered no deprivation
of any constitutional right.  Absent a violation of Bleish's
constitutional rights, Chief Conley, the NPD, and the City are
entitled to judgment as a matter of law on Counts XVII and XVIII
if those counts are construed to assert <u>Monell</u> claims.  <u>See</u> <u>City
of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) ("If a person
has suffered no constitutional injury at the hands of the
individual police officer[s], the fact that the departmental
regulations may have <u>authorized</u> the use of constitutionally
excessive force is quite beside the point.").  The same
reasoning applies if Counts XVII and XVIII are construed as
common-law negligence claims; even if the arresting officers
were improperly taught that a warrantless arrest could be made
on less than probable cause, Bleish was not harmed by any such
training because her arrest was supported by probable cause.

The other problem with Bleish's claims is that, as a matter
of law, the NPD S.O.P. on which she relies does not authorize

---

warrant can be made whenever . . . [a]n officer has reasonable
grounds to believe that a person has committed a misdemeanor in
the officer's presence (pursuant to RSA 594:10) . . ."  Pl.'s
Mem. of Law, Ex. I (doc. no. 24-11), at 3.

officers to make warrantless arrests on anything less than probable cause.  To be sure, that policy allows such arrests to be made when "[a]n officer has reasonable grounds to believe that a person has committed a misdemeanor in the officer's presence."  Pl.'s Mem. of Law, Ex. I (doc. no. 24-11), at 3. But, while Bleish argues to the contrary, "[p]robable cause and 'reasonable ground' are synonymous," Kay v. Bruno, 605 F. Supp. 767, 773 (citing RSA 594:10, I; State v. Reynolds, 122 N.H. 1161, 1163 (1982)); see also State v. Hutton, 108 N.H. 279, 287 (1967) ("The terms 'reasonable ground' and 'probable cause' . . . mean substantially the same thing.") (quoting State v. McWeeney, 216 A.2d 357, 360 (R.I. 1966); citing Wong Sun v. United States, 371 U.S. 471, 484 (1963)).  Thus, by authorizing warrantless arrests based on reasonable grounds, the NPD S.O.P. does nothing more than authorize warrantless arrests based on probable cause.

Because none of the defendant officers either committed a tort against Bleish or denied her any of her constitutional rights, the City is entitled to judgment as a matter of law on Count XVII and Chief Conley and the NPD are entitled to judgment as a matter of law on Count XVIII.

## Conclusion

For the reasons detailed above, Bleish's motion for summary judgment (doc. no. 24) is denied, and defendants' motion for summary judgment (doc. no. 25) is granted in full.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

July 9, 2012

cc:   Brian J.S. Cullen, Esq.
      Seth J. Hipple, Esq.
      Stephen T. Martin, Esq.